IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID B. ARTER,

       Petitioner,      Case No. 3:06 CV 855

 -vs-

                  <u>MEMORANDUM OPINION</u>

ROBERT JEFFERIES,

       Respondent.

KATZ, J.

 This matter is before the Court on the Report and Recommendation (R & R) of the Magistrate Judge (Doc. 14) and Petitioner David B. Arter's objections to the R & R (Doc. 15), without response by Respondent Warden Robert Jeffreys. In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a de novo determination of those of the Magistrate's findings to which Petitioner objects.

**I. Background**

 The facts of this case are accurately recounted by the Magistrate as follows:

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in a proceeding instituted by any application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal process shall be presumed to be correct. *Keith v. Mitchell*, 455 F.3d 662, 666 (6th Cir. 2006) (*citing* 28 U.S.C. § 2254 (e)(1)(2006)). Petitioner failed to file a direct appeal of his conviction. Consequently, there are no findings of fact made by the state court. Petitioner did, however, plead guilty to engaging in sexual contact with a young man having purposefully compelled the youth to submit by force or threat of force. Petitioner, an adjudicated violent sexual predator, also photographed the youth in a state of nudity (Docket No. 11, Exhibit 1).

 ***

> On December 6, 2000, the Lorain County Grand Jury indicted Petitioner on two counts of illegal use of a minor in nudity-oriented material or performance and one count of furnishing alcohol to a minor with the specification that Petitioner is a sexually violent predator. (Docket No. 11, Exhibit 1) Petitioner withdrew his plea of not guilty and entered a plea of guilty on April 19, 2002 to the amended indictment. (Docket No. 11, Exhibit 2). On April 19, 2002, Petitioner was sentenced to seven years on counts one and two, to run concurrently, six years on count three to run consecutive to counts one and two and six months on count four to run concurrent to the thirteen year total sentence. Pursuant to the plea agreement, Petitioner was to be released after serving fifteen years in prison. (Docket No. 11, Exhibit 3).
>
> On October 5, 2005, Petitioner filed a motion for leave to appeal his sentence. (Docket No. 11, Exhibit 4). The Ohio Court of Appeals for the Ninth Judicial District denied Petitioner's motion on November 3, 2005. (Docket No. 11, Exhibit 7). Petitioner filed a motion for reconsideration on November 8, 2005. (Docket No. 11, Exhibit 8). The Ohio Court of Appeals for the Ninth Judicial District denied Petitioner's motion for reconsideration on December 5, 2005. (Docket No. 11, Exhibit 11). Petitioner filed a memorandum in support of jurisdiction in the Ohio Supreme Court. (Docket No. 11, Exhibit 12). Petitioner withdrew his memorandum in support of jurisdiction. (Docket No. 11, Exhibit 14) and the Ohio Supreme Court granted Petitioner's application for dismissal. (Docket No. 11, Exhibit 15).

R & R at 1-3.

**II. Jurisdiction**

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (citing 28 U.S.C. § 2254).

Petitioner satisfies both prongs of the requirement for habeas jurisdiction. Petitioner was convicted in the Lorain County Court of Common Pleas, and he is incarcerated at North Central Correctional Institution in Marion, Ohio. Petitioner is "in custody" for purposes of habeas jurisdiction. Petitioner alleges that the trial court violated his rights to the constitutional

protections of the Fourteenth Amendment. Such allegations, if true, violate the Constitution of the United States. Accordingly, this Court has jurisdiction.

**III. Standard for habeas review under section 2254**

AEDPA, which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996. In *Lindh v. Murphy*, 521 U.S. 320, 336 (1997), the United States Supreme Court held that the provisions of the AEDPA apply to habeas corpus petitions filed after that effective date. *See also Woodford v. Garceau*, 538 U.S. 202, 210 (2003); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999)("It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date."). Arter's petition was filed afer AEDPA's effective date. Because the habeas petition in this action was filed after the AEDPA took effect, the provisions of that Act apply. *Ford v. Curtis,* 277 F.3d 806, 808 (6th Cir. 2002).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.'" *Woodford*, 538 U.S. at 206 (citing *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). When a Magistrate issues a Report and Recommendation with regard to a petitioner's writ of habeas corpus, a district court reviews such findings de novo. *Hill v. Duriron Co.*, supra, and 28 U.S.C. § 636(b)(1)(B) & (C). The AEDPA states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

The "contrary to" clause allows the granting of the habeas petition if the state court makes a conclusion opposite that reached by the Supreme Court on a similar question of law or facts. *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). The "unreasonable application" clause allows the granting of the writ if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Ordinarily, if a state court does not articulate its reasoning for ruling, the federal court must conduct an independent review of the record to determine whether the state court decision is contrary to the dictates of 28 U.S.C. § 2254. *Harris,* 212 F.3d at 943. However, if the state court decision is void of any results or reasoning that would allow a reviewing court to determine whether its decision was contrary to or involved an unreasonable application of Supreme Court precedent, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented, then this court exercises its independent judgment and reviews the claim de novo. *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir. 2003).

**IV. Statute of limitations**

A petitioner for a writ of habeas corpus has a one year limitation period within which to file his action. 28 U.S.C. § 2244(d)(1). 28 U.S.C. § 2244(d)(1)(A)-(D) provides the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

4

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Furthermore, the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d)(2).

The Sixth Circuit has held that the filing of a delayed appeal tolls the running of the AEDPA one-year limitation, but it does not reset the limitations period. *Goodballet v. Mack*, 266 F. Supp. 2d 702, 706 (N.D. Ohio 2003) (citing *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001)). A delayed appeal is part of the "direct review" of a case. *Id.* A petitioner may file a delayed appeal anytime with the Ohio Supreme Court. *See* Oh. Sup. Ct. R. II, Sec. 2(4)(a). Because the party may file the delayed appeal anytime, effectively delaying the final judgment date, the court decided that filing such an appeal may toll the running of the one-year limitation, but does not restart the limitation period. *Goodballet*, 266 F. Supp. 2d at 706 (citing *Searcy,* 246 F.3d at 519). Specifically, the court reasoned that allowing the filing of a delayed appeal to restart the AEDPA limitations period:

> 'would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations

5

>  provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.'

*Id.* (quoting *Raynor v. Dufrain,* 28 F. Supp.2d 896, 898 (S.D.N.Y. 1998)).

In the present case, petitioner pled guilty on April 19, 2002 to two counts of illegal use of a minor in nudity-oriented material or performance and one count of furnishing alcohol to a minor with the specification that Petitioner is a sexually violent predator.  Petitioner did not file a timely notice of appeal. *Id*. It was not until October 5, 2005, three years later, that Petitioner filed a motion for leave to appeal his sentence. *Id*.  The Sixth Circuit has held the filing of a delayed appeal does not restart the statute of limitations clock; rather, it merely tolls it. *Searcy,* 246 F.3d at 519.

Petitioner looks to *Waldron v. Jackson* as support for his argument that the statute of limitations should restart and not begin to run until 90 days after the delayed appeal has been ruled on.  *Waldron v. Jackson*, 348 F. Supp. 2d 877, 880 (N.D. Ohio 2004).  Mr. Waldron was convicted of two counts of rape and two counts of compelling prostitution. During sentencing, the trial court advised Mr. Waldron of his appellate rights, and Waldron responded that he would pursue an appeal. *Id*. Mr. Waldron's appointed counsel had 30 days in which to file a notice of appeal, and did not do so until four days after the deadline. *Id*. According to Mr. Waldron, his counsel never notified him of the appellate court's dismissal of the appeal. *Id*.

Three years later, Mr. Waldron filed a motion for leave to file a delayed appeal pursuant to Ohio App. R. 5(A). *Id*. This motion and Mr. Waldron's subsequent motion for reconsideration were denied. *Id.* Mr. Waldron appealed both rulings to the Ohio Supreme Court and both were dismissed. *Id*. Mr. Waldron then filed a petition for a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *Id.* at 881.

6

As in the present case, Mr. Waldron argued the one year statute of limitations did not begin to run until 90 days after the final ruling on the delayed appeal. The Magistrate Judge disagreed and correctly concluded that Mr. Waldron's judgment actually became final on September 10, 1998, 30 days after his conviction, at the expiration of time for seeking direct review, and was only tolled during the pendency of Mr. Waldron's delayed appeal. *Id.* The district court quoted *Searcy* and added, "[a] delayed appeal to the Ohio Supreme Court is not part of a petitioner's direct appeal but instead is considered post-conviction or collateral relief which tolls the statute of limitations only for as long as the delayed appeal is before the court." *Id*.

In *Walder*, the court applied section 2244(d)(1)(B) to deny the writ. *Id*. at 886. Section 2244(d)(1)(B) provides that the statute of limitations does not begin to run until at least:

> the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.

*Waldron* is distinguishable from the present case in this regard. In *Waldron*, the district court ruled the ineffective assistance of counsel claim was the state-created impediment.

*Id.* at 883.

> Given that the State created the constitutional impediment to the perfection of Mr. Waldron's appeal, it should not benefit from the subsequent delay created by that violation. Because the petitioner's state claims remain unexhausted until he or she files a motion for a delayed appeal, his ineffective assistance of counsel in filing a timely appeal continues to prevent his filing of a federal habeas petition until the resolution of his delayed appeal. Once the petitioner's delayed appeal has been finally ruled on by the state courts and the ninety day period for filing certiorari with the United States Supreme Court has expired, his or her habeas limitations' period begins to run.

*Id*. at 886.

7

In the case before this Court, Petitioner does not argue that his failure to file a timely motion to appeal was because of ineffective assistance of counsel. Rather, Petitioner claims the state failed to provide him with appellate counsel. Nothing in the record indicates Petitioner requested counsel for appeal from the state. Thus, there was no state-created impediment to prevent Petitioner from timely filing the writ. Even if Petitioner could show that the state was to blame for his failure to request appellate counsel, Petitioner cannot demonstrate that the lack of *appellate* counsel affected his failure to file a writ of habeas corpus within the habeas statute of limitations period.

A delayed appeal is considered part of the post-conviction process and merely tolls the statute of limitations. Petitioner's delayed appeal came well after the one year statute of limitations expired. Therefore, it could not toll any of the time. Petitioner is time barred from bringing this action in this Court.

**V. Conclusion**

For the reasons discussed herein the Magistrate's Report and Recommendation is adopted as the order of this Court. Petitioner's application pursuant to 28 U.S.C. § 2254 is hereby denied.

IT IS SO ORDERED

             s/ *David A. Katz*
             DAVID A. KATZ
             U. S. DISTRICT JUDGE